IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SCOTT BOOTH, *et al.*,  )
                                            )
             Plaintiffs,  )
                                            )
v.  )    Case No. 10-4010-RDR
                                            )
GRANT DAVIS,  )
                                            )
             Defendant.  )

**MEMORANDUM AND ORDER**

This matter comes before the Court upon the Motion of Grant L. Davis to Quash or, in the Alternative, to Modify Subpoena for the Deposition of Hon. Forest Hanna (ECF No. 22) and upon Forest Hanna's Motion to Quash Subpoena to Testify and Produce Documents at Deposition (ECF No. 27). Plaintiffs have filed a response in opposition to both motions. For the reasons explained below, the motions are denied.

**I.    Procedural Conference Requirement**

Before turning to the merits of the instant motions, the Court must consider whether Defendant and movant Forest Hanna have complied with D. Kan. Rule 37.2, which imposes upon the movant a duty to confer before filing a motion seeking judicial resolution of a discovery dispute. The rule provides that the Court will not entertain a motion to quash (or a motion for a protective order or a motion to compel) unless the moving party "has conferred or has made a reasonable effort to confer with opposing counsel concerning the matter in dispute prior to the filing of the motion."

There is nothing before the Court indicating that either Defendant or Hanna has made an attempt to confer with Plaintiffs. The Court does not construe Defendant's statement that he spoke with Plaintiffs' counsel about the deposition and informed counsel that Defendant "would

take issue with the subpoena for documents,"[1] a sufficient attempt to confer.[2] Because Hanna is a nonparty to this litigation, the Court, in its discretion, will excuse the failure in this instance and will consider the merits of his motion. Defendant's motion, however, warrants no special consideration. As the Court informed counsel for the parties during the scheduling conference, the lack of communication between the parties and the lack of any reasonable attempts to resolve issues among themselves is not acceptable. Notwithstanding the Court's admonition, a number of motions have been filed that raise issues the parties should have been capable of resolving without judicial intervention. Defendant has filed a motion to quash that fails to comply with this District's local rules, and, as explained in more detail below, also fails to demonstrate he has standing to move to quash a subpoena issued to a nonparty. In turn, the Court has expended judicial resources considering a motion that is both procedurally and substantively improper. Defendant's motion to quash is denied for failure to confer and for failure to demonstrate standing.

## II. Background

Plaintiffs' counsel have filed this and three other legal malpractice actions in the District of Kansas against Defendant Grant Davis.[3] The plaintiffs to these actions are the individuals or survivors of individuals who filed suits against Robert Courtney—a Missouri pharmacist who diluted chemotherapy drugs—and against drug manufacturers Eli Lilly and Company and

---

[1] Mot. of Def. Grant L. Davis to Quash or, in the Alternative, to Modify Subpoena for the Dep. of Hon. Forest Hanna at 4, ECF No. 22).

[2] *See* D. Kan. R. 37.2 ("A 'reasonable effort to confer' means more than mailing for faxing a letter to the opposing party. It requires that the parties in good faith converse, confer, compare views, consult, and deliberate, or in good faith attempt to do so.").

[3] *See Schmitz, et al. v. Davis*, 10-4011-RDR; *Carrel v. Davis*, 10-4124-RDR; *Kirkengaard v. Davis,* 10-4125-RDR.

Bristol-Myers Squibb Company. Davis represented approximately eighty of the three-hundred-plus plaintiffs in these suits, including the plaintiffs who have filed suit in this District. Plaintiffs contend Davis' actions related to an alleged aggregate settlement constitute legal malpractice.

Plaintiffs assert that Defendant advised his clients to opt into a finite lump-sum settlement agreement with the pharmaceutical companies without knowledge of the amount each of the plaintiffs would receive—a settlement agreement Plaintiffs say created serious conflicts of interest. According to settlement documents presented to the Court, if any of the plaintiffs in these individual actions decided not to participate in the settlement, the pharmaceutical companies retained the unilateral right to cancel the entire settlement agreement.[4] Plaintiffs allege the conflicts arose between Defendant and his clients because Defendant had an interest in obtaining a higher aggregate fee if his clients agreed to the settlement. Plaintiffs also contend the settlement agreement created serious conflicts of interest among Defendant's clients because they became competitors for their respective shares of a finite lump sum to be divided among themselves and among other plaintiffs participating in the settlement.

The discovery dispute before the Court pertains to information Plaintiffs seek regarding the process by which Plaintiffs were awarded proceeds from the settlement fund. Plaintiffs have presented some evidence indicating the settlement agreement contemplated that a special master would prepare a methodology for evaluating the participating plaintiffs' respective claims and would develop criteria to allocate the settlement fund. Judge Lee E. Wells, of Jackson County, Missouri Circuit Court, appointed two special masters for this purpose and to make a recommendation regarding apportionment of the settlement fund among plaintiffs. The special

---

[4] Terms of Settlement Agreement In Re: Courtney Litigation at 2, ECF No. 34-3.

masters, both former judges, developed what the briefs refer to as a "matrix," a case valuation system they utilized in making their determination about the division of the settlement fund.

Plaintiffs have served a subpoena *duces tecum* on Forest Hanna, one of the special masters. They seek to depose Hanna and request that he produce a variety of documents at the time of the deposition. Defendant Davis and Hanna have each filed motions to quash, which the Court addresses below.

### III.    Defendant's Motion to Quash

Before the Court may address the merits of Defendant's motion to quash, the Court must satisfy itself that Defendant has standing to move to quash a subpoena served on a nonparty.[5] Generally, a party to a suit lacks standing to move to quash a subpoena served on a nonparty.[6] An exception exists when the movant "has a personal right or privilege with respect to the subject matter requested in the subpoena."[7] In this case, Defendant's motion lacks any statement regarding standing. After Defendant filed the instant motion but before he filed his reply brief, both the Court and Plaintiffs' counsel suggested to Defendant during the scheduling conference that Defendant had not demonstrated he had standing to move to quash the subpoena served on Hanna. Nevertheless, Defendant's reply brief still fails to articulate any reason why he has standing to bring the motion to quash. Moreover, the real party with standing to move to quash, Hanna, has now done so. The arguments presented in each of the motions are similar, and as

---

[5] *P.S. ex rel. Nelson v. The Farm, Inc.*, No. 07-2210-JWL-DJW, 2007 WL 4570872, at *1 (D. Kan. Dec. 27, 2007).

[6] *Dodson Aviation, Inc. v. HLMP Aviation Corp.*, No. 08-4102-EFM, 2009 WL 1532683, at *2 (D. Kan. June 2, 2009) (citing *Hertenstein v. Kimberly Home Health Care, Inc.*, 189 F.R.D. 620, 635 (D. Kan. 1999)).

[7] *P.S.*, 2007 WL 4570872, at *1.

4

explained below, the Court rejects Hanna's arguments. For all of these reasons, Defendant's motion is denied.

## IV. Forest Hanna's Motion to Quash

Fed. R. Civ. P. 45 governs subpoenas directed at nonparties to litigation. Under the rule, the issuing court must quash or modify a subpoena that fails to allow reasonable time for compliance, requires a nonparty to travel more than 100 miles, requires the disclosure of privileged or other protected material, or subjects a person to an undue burden.[8] The court may quash or modify a subpoena that requires the disclosure of a trade secret or other confidential or commercial information, requires disclosure of an unretained expert's opinion, or requires a nonparty to incur substantial expense to travel more than 100 miles to attend trial.[9]

In this case, Hanna makes several arguments as to why the Court should quash the subpoena. He argues he performed judicial functions in his role as a special master, and therefore, information concerning the Courtney litigation is protected. He further asserts relevance, overbreadth, undue burden, and confidentiality objections. The Court addresses each of these objections in turn.

### A. Common Law Protections Against Discovery Sought from Judges

The central issue presented in the parties' briefs is whether Hanna's actions as a special master were judicial in nature and therefore deserving of some measure of protection from discovery. This presents somewhat of a novel question. While there is authority addressing when a judge may be subpoenaed to testify, there is scant case law considering the circumstances

---

[8] Fed. R. Civ. P. 45(c)(3)(A)(i)-(iv).

[9] Fed. R. Civ. P. 45(c)(3)(B)(i)-(iii).

under which an arm or adjunct of the judge may be required to testify or to provide discovery. Nevertheless, authority considering the origins of, and reasons for, limiting testimony and discovery from judges proves helpful in deciding this matter.

At common law, it has long been held that judges are absolutely immune from civil liability in the performance of judicial functions.[10] "[I]mmunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches."[11] Consequently, immunity that "derives from judicial immunity may extend to persons other than a judge where performance of judicial acts or activity as an official aid of the judge is involved."[12] Therefore, courts properly extend judicial immunity to agents and adjuncts of the court when these individuals' duties "had an integral relationship with the judicial process."[13] The Supreme Court has directed that it is the "nature of the function performed, not the identity of the actor who performed it" that informs the analysis.[14]

The rationale for limiting discovery and testimony from judges is similar to the reasons for judicial immunity: to ensure judicial independence and integrity.[15] Absent a showing of extraordinary need, judges are usually shielded from discovery regarding matters observed or

---

[10] *Whitesel v. Sengenberger*, 222 F.3d 861, 867 (10th Cir. 2000) (citing *Henriksen v. Bentley*, 664 F.2d 852, 855 (10th Cir. 1981)).

[11] *Forrester v. White*, 484 U.S. 219, 227 (1988) (emphasis in original).

[12] *Whitesel*, 222 F.3d at 867.

[13] *Id.* (quoting *Eades v. Sterlinske*, 810 F.2d 723, 726 (7th Cir. 1987)).

[14] *Forrester*, 484 U.S. at 229.

[15] *See Hensley v. Alcon Labs., Inc.*, 197 F. Supp. 2d 548, 549-50 (S.D.W. Va. 2002).

performed in carrying out their judicial duties.[16] Although judges enjoy no special protection from being subpoenaed, courts typically disallow inquiries into the mental process used in formulating judgments or performing other traditional judicial functions.[17] However, inquiries concerning relevant factual knowledge are generally permissible under certain circumstances.[18] As the Kansas Supreme Court opined, "A judge should only be required to testify if he or she possesses factual knowledge; the knowledge is highly pertinent to the jury's task; and the judge is the only possible source of the testimony on the relevant information."[19]

Hanna cites several opinions in which courts have disallowed inquiries about judges' mental processes with regard to the performance of their judicial functions,[20] including settlement negotiations.[21] The majority of these cases are distinguishable, however, because they involve sitting judges performing tasks dissimilar to those Hanna performed. This line of cases provides little guidance as to when other individuals may be afforded the same protections from

---

[16] *See, e.g., id.* at 550 (S.D.W. Va. 2002); *State v. Comprehensive Health of Planned Parenthood of Kan. and Mid-Mo., Inc.*, 241 P.3d 45, 73 (Kan. 2010).

[17] *United States v. Roebuck*, 271 F. Supp. 2d 712, 718 (D. VI. 2003) (citing *United States v. Morgan*, 313 U.S. 404, 422 (1941)); *Fayerweather v. Ritch*, 195 U.S. 276, 306-07 (1904); *Robinson v. Comm'r of the Internal Rev. Svs.*, 70 F.3d 34, 38 (5th Cir. 1995); *Grant v. Shalala*, 989 F.2d 1332, 1344-45 (3d Cir. 1993)).

[18] *See, e.g., Planned Parenthood*, 241 P.3d at 73; *Roebuck*, 271 F. Supp. 2d at 718.

[19] *Planned Parenthood*, 241 P.3d at 73 (citing *United States v. Roth*, 332 F. Supp. 2d 565, 568 (S.D.N.Y. 2004)).

[20] *See Robinson*, 70 F.3d 34 (finding that the Tax Court did nor err in refusing to allow a party to subpoena a state court judge for his testimony regarding his mental processes in reaching a judicial opinion); *Roth*, 332 F. Supp. 2d 565 (quashing a subpoena issued to a judge that required his testimony regarding his mental process involving a defendant's plea and further finding the judge should not be required to testify as a fact witness because of the availability of testimony from other sources); *United States v. Dowdy*, 440 F. Supp. 894 (W.D. Va. 1977) (quashing a subpoena requiring a district court judge to appear as a witness and testify about an incident that occurred in a case pending before the judge); *In re Whetstone*, 580 S.E.2d 447 (S.C. 2003) (quashing the subpoena requiring the testimony of a judge regarding a case he presided over).

[21] *Hensley*, 197 F. Supp. 2d at 550 (denying leave to subpoena a sitting judge who conducted an off-the-record settlement conference in a separate suit).

discovery.

Even cases involving other individuals are not factually analogous to the matter presently before the Court. For example, Hanna cites *Gary W. v. State of Louisiana, Department of Health Human Resources*, a Fifth Circuit opinion affirming the district court's ruling that the defendant could not depose a special master.[22] In *Gary W.*, however, the court appointed the special master to ensure compliance with a protective order the court entered during the remedial phase of a class action suit.[23] The similarities between this discovery dispute and *Gary W.* begin and end with the fact that both individuals held the title of "special master." Unlike the special master in *Gary W.*, Hanna's role involved carrying out duties specifically contemplated by a private settlement agreement rather than ensuring compliance with a court order that resolved a dispute between parties to the underlying litigation. At most *Gary W.* illustrates that courts may, in some instances, properly extend to other individuals certain protections afforded to judges. *Gary W.* does not stand for a blanket extension of these protections to any individual bearing the title of "special master."

There is an absence of authority considering when individuals other than a judge may be shielded from discovery on the same basis as protections afforded to judges. However, there are public policy considerations that would lead the undersigned to believe restricting discovery from these individuals would be prudent in some instances. For example, it would make little sense to bar discovery from a judge concerning his or her mental impressions or opinions regarding a case but not afford the same protections to the judge's law clerk privy to the same

---

[22] *See Gary W. v. State of Louisiana, Dept. of Health and Human Res.*, 861 F.2d 1366 (5th Cir. 1988).

[23] *Id.* at 1367.

information.  This is the same rationale for extending immunity to these individuals.  Therefore, the fact that Hanna did not preside over the Courtney litigation and did not act as the sitting judge is not fatal to his assertion that he should be afforded the same protections against discovery generally afforded to judges.

To determine if an individual other than a judge may properly object to a subpoena on this basis requires an examination into whether the individual performed or carried out judicial functions.  In the context of judicial immunity, courts have generally found the following acts to be judicial functions: issuing judgments, holding hearings, denying motions, assigning cases, rendering decisions on pretrial matters, imposing sentences, and entering injunctions, to name a few.[24]  The Supreme Court has instructed that an examination of the "nature of the function performed" is essential when deciding whether a an individual is entitled to judicial immunity.[25]  To that end, the Fifth Circuit has considered (1) whether the acts are normal judicial functions; (2) whether the acts occurred in a courtroom; (3) whether the acts centered around a case pending before the court; and (4) whether the acts arose from a visit to the judge in his or her official capacity.[26]  Along the same vein, when the Western District of Virginia decided whether to permit a party to subpoena a sitting judge, the court first examined the nature of the judge's acts and noted, "Where a judge's act is a function normally performed by a judge, and where the parties believe the judge is acting officially, the act is an official duty."[27]

---

[24] *See* 46 Am. Jur. 2d § 71 (collecting cases).

[25] *Mireless v. Waco*, 502 U.S. 9, 13 (1991) (citing *Forrester*, 484 U.S. at 227).

[26] *Malina v. Gonzales*, 994 F.2d 1121, 1124 (5th Cir. 1993).

[27] *Hensley*, 197 F. Supp. 2d at 550 (citing *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)).

With the above considerations in mind, the Court finds Hanna did not perform judicial functions. Hanna relies heavily on his title as special master and his status as a former judge. However, neither Hanna's title nor his prior experience as a judge establish he performed judicial functions in the Courtney litigation. Hanna did not preside over hearings or trials, rule on motions, or even make recommendations to Judge Wells regarding disputes *between the plaintiffs and the defendants*. Indeed, at the time of Hanna's appointment, the plaintiffs and the defendant pharmaceutical companies had reached a settlement agreement resolving the claims against the pharmaceutical companies. It appears the pharmaceutical companies had already transferred the settlement funds into a trust held under the control of the Plaintiffs' Steering Committee, and the only issue left to decide was how to apportion the settlement fund among the participating plaintiffs. A judge's role usually involves resolving issues between parties to the litigation, unlike here, where the parties had reached a settlement agreement prior to Hanna's involvement. Moreover, the task of apportioning a settlement award among more than three-hundred plaintiffs who filed separate suits against the same defendants is not a task performed by courts on a routine basis.

Although Judge Wells appointed Hanna to serve as special master, Hanna's role furthered the objectives of a private settlement agreement, not the court. The Court reaches this conclusion by examining the impetus behind Hanna's appointment. Plaintiffs have presented sufficient evidence indicating—for the purpose of this discovery dispute—that the settlement agreement expressly contemplated that the Plaintiffs' Steering Committee (plaintiffs' lawyers from six law firms that represented most of the settling plaintiffs in the litigation) would have exclusive control over the selection of a special master to allocate settlement proceeds among

participating plaintiffs.[28]  Indeed, it appears that Defendant himself had contemplated the use of a special master before the parties had even reached a settlement agreement.  Writing on behalf of the Plaintiffs' Steering Committee, Defendant made an offer to settle all cases for a specified amount.[29]  If the parties reached a settlement agreement, the Plaintiffs' Steering Committee would "seek the appointment of an independent master to equitably divide the money between the several hundred victims in these cases."[30]  Absent the terms of the private settlement agreement between the parties, Judge Wells would have had no occasion to appoint Hanna.  In other words, the settlement agreement was the driving force behind Hanna's appointment.

Moreover, it appears the parties could have just as easily agreed to have other individuals apportion the settlement fund.  For example, if the settlement agreement had contemplated allocation by a private accountant, the undersigned would be hard pressed to see how this individual should be shielded from discovery by the same protections afforded to judges.  Additionally, the fact that Hanna completed a task just as easily performed by those other than a judge or a special master also cuts against his argument that he acted in a judicial capacity.

Hanna has failed to cite, and this Court has failed to unearth, any case law in which a court wholly prohibited discovery from an individual performing tasks similar to those Hanna performed on the basis that such information was protected by rules greatly narrowing permissible discovery from a judge.  There is good reason for this.  The limitations on testimony and discovery from judges are sweeping and serve to protect judges' mental impressions and the

---

[28] Terms of Settlement Agreement In Re: Courtney Litigation at 5, ECF No. 5.

[29] Letter from Grant Davis (Aug. 7, 2002) at 1, ECF No. 34-2.

[30] *Id.*

11

independence of the judiciary in carrying out its duties. Shielding Hanna from discovery would not advance these purposes. It would simply bar Plaintiffs from knowing how a lump-sum settlement was allocated.

For the foregoing reasons, the Court rejects Hanna's argument that he acted in a judicial capacity in the Courtney litigation and that any and all discovery from him should be barred. Accordingly, the Court also rejects Hanna's contention that Plaintiffs are required to make a heightened showing of relevance for discovery to be allowed. As explained in more detail below, the information Plaintiffs seek appears facially relevant to their alleged damages and the alleged breach of duty.

### B. Relevance

Although Rule 45 does not specifically provide for lack of relevance as a reason for quashing a subpoena, it is well settled "that the scope of discovery under a subpoena is the same as the scope of discovery under Rules 26(b) and 34."[31] Therefore, the Court must examine whether a subpoena is overly broad or seeks irrelevant information under the same standards as the rules governing discovery requests served on parties.[32] Under Rule 26(b)(1), discovery may be obtained "regarding any non-privileged matter that is relevant to any party's claim or defense . . . ." Relevance is broadly construed, and "[a] request for discovery should be allowed 'unless *it is clear* that the information sought can have *no possible* bearing' on the claim or defense of a

---

[31] *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.*, 211 F.R.D. 658, 662 (D. Kan. 2003) (citing the advisory committee note to the 1970 Amendment of Rule 45(d)(1)).

[32] *Id.*

party."[33]  When the discovery sought appears facially relevant, the party resisting discovery has the burden to show the information does not come within the broad scope of relevance as defined by Fed. R. Civ. P. 26(b) or potential harm outweighs the presumption in favor of broad disclosure.[34]  Conversely, when a discovery request seeks information that is not facially relevant, the party seeking discovery bears the burden of demonstrating relevance.[35]

The information Plaintiffs seek appears facially relevant.  The crux of Plaintiffs' contentions is that they were harmed as a result of the settlement agreement.  Therefore, it comes as no surprise that Plaintiffs would want to know more about the apportionment of the settlement fund, which necessarily includes information about the settlement awards received by other participating plaintiffs given the nature of the lump sum settlement.  The Court examined the parties' dispute regarding damages and relevance in greater detail in a previous Memorandum and Order and will not repeat the same findings here.[36]  For the reasons explained in the previous Memorandum and Order and for the reasons stated herein, the Court finds the information Plaintiffs seek appears facially relevant.  Therefore, Hanna bears the burden of establishing lack of relevance.

Hanna argues the information Plaintiffs seek is not relevant because his report regarding apportionment of the settlement fund was an advisory report to the trial judge and was not binding.  He states there is no evidence whether Judge Wells fully adopted Hanna's

---

[33] *Sheldon v. Vermonty*, 204 F.R.D. 679, 689-90 (D. Kan. 2001) (emphasis in original) (quoting *Scott v. Leavenworth Unified Sch. Dist. No. 453*, 190 F.R.D. 583, 585 (D. Kan. 1999)).

[34] *Hammond v. Lowe's Home Ctrs., Inc.*, 216 F.R.D. 666, 670 (D. Kan. 2003).

[35] *Goodyear*, 211 F.R.D. at 633 (citing *Steil v. Humana Kan. City, Inc.*, 197 F.R.D. 442, 445 (D. Kan. 2000)).

[36] *See* Mem. and Order at 5-10, ECF No. 82.

recommendations, and therefore the recommendations are immaterial. When assessing the relevance of discovery sought, the Court will not require Plaintiffs to submit proof of what seems to be the obvious conclusion that Hanna's recommendation had significant bearing on the settlement payment the plaintiffs received.

Hanna also argues that the information he possesses would not establish Defendant's actions constituted legal malpractice. The Court does not share Hanna's narrow view of relevance at the discovery stage of proceedings. As previously stated, it appears this information is relevant to damages and to the alleged breach of duty. For these reasons, Hanna's relevance objection is overruled.

### C. Overbreadth

Hanna appears to argue the document production requests are overly broad because they contain the phrase "all documents." A request for production is overly broad when it contains terms that "make arduous the task of deciding which of numerous documents may conceivably fall within its scope."[37] A discovery request seeking documents "'pertaining to' or 'concerning' a broad range of items requires the respondent either to guess or move through mental gymnastics. . . to determine which of the many pieces of paper conceivably contain some detail, either obvious or hidden, within the scope of the request."[38] However, document requests are not facially objectionable when the omnibus phrase "modifies a sufficiently specific type of information, document, or event, rather than large or general categories of information or

---

[37] *In re Urethane Antitrust Litig.*, 261 F.R.D. 570, 576 (D. Kan. 2009) (quoting *Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 658 (D. Kan. 2006)).

[38] *Id.* (quoting *Johnson*, 238 F.R.D. at 658).

14

documents[.]"³⁹

Here, the Court finds the document requests modify sufficiently specific categories of documents. The requests are all aimed at documents relating to various aspects of the Courtney litigation and settlement, and all describe with reasonable specificity the type of information Plaintiffs seek. Hanna also asserts the document requests are overbroad because they contain no temporal scope. Although discovery requests containing no temporal scope are often facially objectionable,⁴⁰ in this case, Hanna's involvement with the Courtney litigation was limited. Therefore, the documents one would expect Hanna to produce would not have been created over a vast time period. The Court finds the requests describe with reasonable particularity the types of documents Plaintiffs seek, and therefore, Hanna's overbreadth objection is overruled.

### D. Undue Burden

Compliance with a subpoena inevitably involves some measure of burden to the producing party. Nevertheless, the court will not deny a party access to relevant discovery because compliance inconveniences a nonparty or subjects it to some expense.⁴¹ Nor will the court "excuse compliance with a subpoena for relevant information simply upon the cry of 'unduly burdensome.'"⁴² The individual seeking to quash a subpoena carries the burden to show compliance with the subpoena would subject him to an undue burden.⁴³

---

[39] *Id.* (quoting *Johnson*, 238 F.R.D. at 658).

[40] *See, e.g., Hammond*, 216 F.R.D. at 675 (finding an interrogatory with no temporal scope facially overbroad).

[41] *EEOC v. Citicorp Diners Club, Inc.*, 985 F.2d 1036, 1040 (10th Cir. 1993).

[42] *Id.*

[43] *Id.; see also Sentry Ins. v. Shivers*, 164 F.R.D. 255, 256 (D. Kan. 1996).

This district has, at times, applied a balancing test when evaluating whether a subpoena imposes an undue burden on a party from whom discovery is sought.[44] Implicit in these opinions is the notion that the challenged subpoenas impose some measure of burden greater than that normally involved with responding to a subpoena. Here, Hanna has failed to show the subpoena imposes any such burden on him. Even if the Court applied the balancing test—which takes into account "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed"[45]—it would still conclude that the test weighs in favor of disclosure for all of the reasons described in this Memorandum and Order.

Typically, a movant asserting an undue burden objection "must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request."[46] Hanna makes no evidentiary showing that the subpoena imposes an undue burden. Moreover, his briefs fail to detail the nature of the burden he contends the subpoena imposes. The Court lacks information about the number of responsive documents Hanna possesses or the amount of time it would take him to locate and gather these documents. In one instance, Hanna contends the matrix is the only document in his possession.[47] He later suggests that he may have a file that

---

[44] *See, e.g., In re Motor Fuels Sales Practices Litig.*, 258 F.R.D. 407, 418 (D. Kan. 2009) *rev'd in part*, 208 F.R.D. 407 (D. Kan. 2009); *In re Subpoena Duces Tecum Directed to RCA Group*, No. 06-230-JWL-GLR, 2006 WL 3844791, at *3-*4 (D. Kan. Dec. 28, 2006).

[45] *In re Motor Fuels Sales Practices Litig.*, 258 F.R.D. at 418.

[46] *Speed Trac Techs., Inc. v. Estes Express Lines, Inc.*, No. 08-212-KHV, 2008 WL 2309011, at *5 (D. Kan. June 3, 2008) (citing *Waddell & Reed Fin., Inc. v. Torchmark Corp.*, 222 F.R.D. 450, 454 (D. Kan. 2004)).

[47] Reply Mem. at 10, ECF No. 40.

is responsive.[48] He also urges the Court to consider that he alone would be responsible for producing responsive documents and that he lacks employees available to assist in assembling the requested materials.[49] These somewhat contradictory statements leave the Court to speculate as the amount of time and effort Hanna would have to devote to producing responsive documents. For these reasons, the Court will not quash the subpoena on the basis that it imposes an undue burden on Hanna. To the extent Hanna believes confusion exists regarding what documents the subpoena seeks, Hanna and Plaintiffs' counsel shall confer in an effort to clarify what he needs to produce.

### E. Confidentiality

Hanna also has raised concern about producing documents containing personal information from the plaintiffs who participated in the Courtney settlement. It is well settled that "a concern for protecting confidentiality does not equate to a privilege."[50] The Court will not bar discovery on the sole basis of confidentiality.[51] Concerns about confidentiality are better addressed in the form of a motion for a protective order protecting against disclosure of confidential information to those outside of the litigation.[52] The Court has already entered a protective order in this case, which should adequately address Hanna's concerns about the private information of plaintiffs participating in the Courtney settlement. All documents Hanna produces that contain personal, medical, or financial information shall be deemed "Confidential" and subject to the terms of the protective order. For the foregoing reasons, Hanna's

---

[48] *Id.* at 10, 13 (stating the subpoena orders the production of all documents in the special master's file).

[49] *Id.* at 12.

[50] *Jones v. Wet Seal Retail, Inc.*, 245 F.R.D. 724, 726 (D. Kan. 2007).

[51] *Sonnino v. Univ. of Kan. Hosp. Auth.*, 220 F.R.D. 633, 642 (D. Kan. 2004).

[52] *Wet Seal Retail, Inc.*, 245 F.R.D. at 726.

confidentiality objection is overruled.

After conferring about a mutually agreeable time, date, and place of Hanna's deposition, Plaintiffs may serve a renewed subpoena *duces tecum*. Although it is somewhat unclear what responsive documents Hanna possesses, the Court reminds Hanna and the parties that Hanna is obligated to produce only the documents within his possession, custody, or control.[53]

Accordingly,

**IT IS THEREFORE ORDERED** that the Motion of Grant L. Davis to Quash or, in the Alternative, to Modify Subpoena for the Deposition of Hon. Forest Hanna (ECF No. 22) is hereby denied.

**IT IS FURTHER ORDERED** that Forest Hanna's Motion to Quash Subpoena to Testify and Produce Documents at Deposition (ECF No. 27) is hereby denied.

**IT IS SO ORDERED.**

Dated this 23rd day of May, 2011, at Topeka, Kansas.

                                              s/K. Gary Sebelius
                                              K. Gary Sebelius
                                              U.S. Magistrate Judge

---

[53] *See Pulsecard, Inc. v. Discovery Card Servs., Inc.*, 168 F.R.D. 295, 307 (D. Kan. 1996).