**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| SCOTT BOOTH, et al., | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| v. | ) |
| | ) |
| GRANT DAVIS, | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

CIVIL ACTION

No. 10-4010-KHV

**MEMORANDUM AND ORDER**

Scott Booth, Katie Michelle Booth, Colten Scott Booth and Brian Cory Booth bring legal malpractice claims against Grant Davis. Plaintiffs allege that because of defendant's negligence, fraud and breach of fiduciary duty, their legal interests in claims by their now deceased wife and mother, Connie Booth, lost settlement value. The claims which plaintiffs settled asserted that two pharmaceutical companies, Eli Lilly and Company ("Eli Lilly") and Bristol-Myers Squibb Company ("Bristol-Myers"), failed to take measures to prevent Robert Courtney, a pharmacist from diluting chemotherapy drugs. Hundreds of other plaintiffs brought similar claims which the parties settled in a "Global Settlement Agreement." This matter comes before the Court on <u>Defendant Grant Davis' Motion For Summary Judgment</u> (Doc. #319) filed April 11, 2016.[1] For reasons set forth below, the Court finds that the motion should be sustained.

**I.    Legal Standards**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories,

---

[1]      On July 2, 2015, defendant filed this motion under seal. <u>See Defendant Grant Davis' Motion For Summary Judgment</u> (Doc. #270). On March 23, 2016, the Court directed the parties to file public versions of all documents previously filed under seal, with confidential medical and personal identifying information redacted. <u>See Memorandum And Order</u> (Doc. #307).

and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Hill v. Allstate Ins. Co., 479 F.3d 735, 740 (10th Cir. 2007).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."  Anderson, 477 U.S. at 248.  A "genuine" factual dispute requires more than a mere scintilla of evidence in support of a party's position.  Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Nahno-Lopez v. Houser, 625 F.3d 1279, 1283 (10th Cir. 2010).  Once the moving party meets his burden, the burden shifts to the nonmoving parties to demonstrate that genuine issues remain for trial as to dispositive matters for which they carry the burden of proof.  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  The nonmoving parties may not rest on their pleadings but must instead set forth specific facts supported by competent evidence.  Nahno-Lopez, 625 F.3d at 1283.

The Court views the record in the light most favorable to the nonmoving parties.  Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991).  It may grant summary judgment if the nonmoving parties' evidence is merely colorable or is not significantly probative.  Anderson, 477 U.S. at 250-51.  In response to a motion for summary judgment, a party cannot rely on ignorance of facts, speculation or suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial.  Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).  The heart of the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law."

Anderson, 477 U.S. at 251-52.

**II.** **Facts**

     For purposes of summary judgment, the following facts are either uncontroverted or construed in the light most favorable to plaintiffs.[2]

     A.     The Suit Against Courtney Pharmacy, Robert Courtney, Eli Lilly And Bristol-Myers

     On February 12, 2002, on behalf of Connie Booth, Grant Davis and his law firm, Davis, Bethune & Jones, LLC filed an action in state court in Jackson County, Missouri against Courtney Pharmacy, Inc. d/b/a/ Research Medical Tower Pharmacy, Robert Courtney, Eli Lilly and Bristol-Myers.  See Petition For Damages, Doc. #271-5.  The lawsuit alleged that Connie Booth suffered injuries on account of diluted chemotherapy medication which she received from Courtney.  Missouri Circuit Court Judge Lee Wells ordered the parties to participate in mediation.  See Defendant's Ex. 11.

     On November 4, 2002, Connie Booth signed a Disclosure of Global Settlement with Eli Lilly and Bristol-Myers. Defendant's Ex. 13. The disclosure stated that defendant's law firm represented most of the plaintiffs in more than 300 separate lawsuits regarding Courtney's dilution of chemotherapy medication.  It further stated that Eli Lilly and Bristol-Myers had made a joint settlement offer to resolve all of the cases and to set aside money for future cases against them.  The disclosure referred to the settlement agreement and by signing the disclosure, Connie Booth represented that she had reviewed the settlement agreement and understood that she had the right to opt out of the settlement agreement and pursue her claims separately.  She also represented that she

---

    [2]    Each side includes argument in their statements of facts.  The Court disregards all legal arguments set forth in the fact sections.  See D. Kan. Rule 56. 1.

understood that a Special Master would determine her right to funds under the settlement agreement.

The settlement agreement provided that a settlement fund of no less and no more than a specified amount would be established through binding arbitration. Connie Booth acknowledged that Eli Lilly and Bristol-Myers had offered Georgia Hayes (plaintiff in a similar case) settlements of approximately $1.45 million each and that Hayes would not be participating in the distribution of funds by the Special Master.[3]

Also on November 4, 2002, Connie Booth signed a Release And Settlement Agreement which stated that she understood the process by which the Special Master would determine the settlement amounts and acknowledged that she agreed to accept the settlement amount determined by the Special Master as a full and complete compromise of her claims.[4]  Defendant's Ex. 14.

---

[3]     When the parties reached the global settlement, trial had started in Hayes' case.

[4]     The Release And Settlement Agreement provided in part as follows:

Settlement Amount. In consideration of the Release and Discharge set forth above, claimants hereby accept entitlement to a settlement amount to be determined by a Special Master appointed by the Court.  Claimants acknowledge that they have consulted with their attorneys prior to executing this Agreement, and further acknowledge: (1) that they understand the process by which settlement amounts will be determined by the Special Master; and (2) that they have agreed to accept the settlement amount as determined by the Special Master as a full and complete compromise of all claims against Lilly and/or [Bristol-Myers].  The amount determined by the Special Master shall be set forth in the attached Certification of Special Master.

Defendant's Exhibit 14.  Pursuant to the settlement agreement, Connie Booth filled out and submitted a claim form.  The claim form stated that she agreed to give up her rights against Lilly and Bristol-Myers.  She initialed every page and submitted an Affidavit of Accuracy for all information in the form.  See Claim Form, Defendant's Ex. 15.

On May 20, 2003, the Special Masters[5] awarded $249,057.76 to Connie Booth.[6]  On June 24, 2003, Connie Booth signed a Settlement Sheet which acknowledged receipt of settlement funds minus attorney's fees.  <u>See</u> Defendant's Ex. 17.

B.      <u>The Tilzer Case</u>

Rita Tilzer, another client of defendant, was part of the global settlement with Eli Lilly and Bristol-Myers.  She died before the settlement and the court substituted her husband and children as plaintiffs.  The <u>Tilzer</u> plaintiffs entered the settlement agreement, but objected to the amount of the Special Masters' award.  Judge Wells approved the Special Masters' award over the Tilzer objection.  On November 24, 2003, the pharmaceutical companies filed a motion to enforce the settlement agreement, asking Judge Wells to order the Tilzers to execute a dismissal with prejudice and otherwise comply with the terms of the settlement agreement.  Two days later, Davis filed a motion to enforce his attorney's lien.  The Tilzers opposed the motion to enforce the settlement, arguing that it was illegal and unethical on its face, that it violated Rule 4-1.8(g), Missouri Rules of Professional Conduct, which governs aggregate settlements,[7] and that the parties had obtained it through deceit and fraud.  At a hearing on December 22, 2003, the Tilzers advised Judge Wells that

---

[5]     Although the Release And Settlement Agreement referred to "A Special Master," two Special Masters determined the awards.  <u>See</u> Doc. #271-16.

[6]     On June 13, 2003, Connie Booth executed a Release of Courtney Qualified Settlement Fund.  Defendant's Ex. 18.

[7]     Rule 4-1.8(g), Mo. R. Prof. Conduct, provides as follows:

A lawyer who represents two or more clients shall not participate in making an aggregate settlement of the claims of or against the clients, or in a criminal case an aggregated agreement as to guilty or nolo contendere pleas, unless each client gives informed consent, in writing signed by the client.  The lawyer's disclosure shall include the existence and nature of all the claims or pleas involved and of the participation of each person in the settlement.

they opposed Davis' motion to enforce his attorney's lien, for the reasons they had stated in opposing the motion to enforce the settlement.  On December 30, 2003, the Tilzers filed a counterclaim against Davis, alleging breach of fiduciary duty, professional negligence and breach of contract.

At a motion hearing on January 2, 2004, the Tilzers sought a continuance to allow discovery on their counterclaim.  The Tilzers were concerned that their legal malpractice claim might later be deemed a compulsory counterclaim to the motion for enforcement of the attorney's lien, and therefore argued that they were entitled to fully litigate the issue.  Judge Wells denied the continuance, but stated that he did not intend his ruling on the attorney's lien motion to foreclose future malpractice proceedings.  The Tilzers withdrew from the hearing to avoid a later claim of collateral estoppel on their legal malpractice claims.  Judge Wells then heard testimony of Davis and Jerome Tilzer.

On January 14, 2004, Judge Wells issued an order which granted Davis' motion to enforce the attorney's lien and granted the pharmaceutical companies' motion to enforce the settlement agreement.  Judge Wells specifically found that because of the methodology which he and the Special Masters had developed, the Global Settlement was not an aggregate settlement under Rule 4-1.8(g).  He also found no credible evidence of misconduct by Davis.

The Tilzers did not appeal these rulings and on April 5, 2004, they dismissed their counterclaim for legal malpractice.  Later that month, they filed a separate legal malpractice action in the District Court of Johnson County, Kansas, claiming breach of fiduciary duty, professional negligence, negligent misrepresentation, breach of contract and fraud arising from Davis' representation in the underlying action. The Tilzers alleged that the global settlement agreement was an aggregate settlement and that Davis had failed to comply with the disclosure requirements of

Rule 4-1.8(g).

The Johnson County District Court granted summary judgment to Davis, finding that the Tilzer claims arose from the attorney-client relationship in the Missouri action for which Davis had sought to enforce his attorney's lien. The district court found that the Missouri compulsory counterclaim rule required the Tilzers to assert their malpractice claims in the Missouri action, and that Davis was therefore entitled to summary judgment on "res judicata claim preclusion grounds." The district court also ruled that the Tilzers were collaterally estopped from re-litigating the aggregate settlement question. Finally, the district court denied the Tilzers' motion for partial summary judgment on the issue whether Davis had participated in an aggregate settlement without providing them the required disclosures. It reasoned that before the Special Masters announced the award to each claimant, the lawyers could not have known the amount that each client would receive and that as a result, "this could not be an aggregate settlement contemplated by the rules of professional conduct." The Tilzers appealed.

On April 3, 2009, the Kansas Supreme Court ruled that the district court had erred in finding that the Missouri compulsory counterclaim rule required the Tilzers to assert their legal malpractice claim in response to Davis' motion to enforce his attorney's lien. It reasoned as follows:

> By moving to enforce an attorney's fee lien in the underlying action, Davis was proceeding against the judgment itself, not against the former client. Such an action does not transform the former client into an "opposing party" for purposes of the compulsory counterclaim rule. To invoke that rule, Davis had to file an independent action against [the] Tilzers, *i.e.*, had to become a "party" in the first instance.

Tilzer v. Davis, Bethune & Jones, LLC, 288 Kan. 477, 486, 204 P.3d 617, 624 (2009).

The Kansas Supreme Court also found that notwithstanding Judge Wells' ruling that the

Global Settlement was not an aggregate settlement, the Tilzers could litigate whether it was an aggregate settlement in their malpractice action in Kansas.  Specifically, the Kansas Supreme Court found that Judge Wells' ruling on the aggregate settlement issue was not necessary for his decision on the attorney's lien motion" because "compliance with [the] ethical rule is not necessarily a condition precedent to the enforcement of an attorney's fee lien." See 288 Kan. at 491-92, 204 P.3d at 627 (violation of ethical rule does not create cause of action, although occasionally, attorney conduct which violates ethics rule may also violate independent legal duty).

The Kansas Supreme Court then decided that "[t]he terms of the Global Settlement contained all of the important features of an aggregate settlement" and that "[r]ather than establishing a non-aggregate settlement, the unavailability of the information required to be disclosed by Rule 4-1.8(g) simply corroborated that it was an aggregate settlement and rendered it impossible for [Davis] to obtain an informed consent under the rule." See 288 Kan. at 494-95, 204 P.3d at 629. The Kansas Supreme Court reversed the district court's grant of summary judgment to Davis, and remanded for further proceedings.  On June 5, 2009, the Kansas Supreme Court issued its mandate. On November 2, 2009, the United States Supreme Court denied Davis' petition for review.  Davis v. Tilzer, 558 U.S. 992 (2009).

The pleadings and proceedings in the Tilzer case were filed under seal and the Johnson County District Court approved restrictions which prevented the Tilzers from contacting other clients of Davis.  After the decision of the Kansas Supreme Court, Davis continued to oppose legal efforts by the Tilzer attorneys to contact other clients of his.  On December 2, 2009, the district court gave the Tilzers permission to contact other clients of Davis.  On December 27, 2009, counsel for the Tilzers (now counsel for the Booth plaintiffs) contacted plaintiffs in this case.  Before he saw the

Tilzer opinion, Scott Booth did not believe that defendant had done anything improper in representing Connie Booth or her family.

C.      The Complaint And Pretrial Order In This Case

On February 3, 2010, plaintiffs filed their complaint in this case.[8]  Plaintiffs allege that Connie Booth hired Davis to represent her in a lawsuit against Eli Lilly and Bristol-Myers for negligence in failing to protect her from the danger of dilution of cancer treatment drugs.  Plaintiffs allege that Davis represented clients in 244 of 348 cases involving similar claims against Eli Lilly and Bristol-Myers; that defendant made aggregate settlement demands without advising his clients (including Connie Booth and plaintiffs) that (1) the first-filed case of Georgia Hayes had been selected to go to trial first; (2) the Special Masters determined settlement amounts according to tiers, based on the timing of claims; and (3) Hayes was the sole member of the first tier and received much more in settlement than those in the second and third tiers.  Plaintiffs also allege that Davis acted to conceal or failed to disclose numerous facts including (1) the specific amounts awarded to all families and the criteria and methodology used to determine the awards; (2) serious conflicts of interest between Davis and each of his clients and (3) the fact that Davis had a strong interest in persuading each client to participate in the global settlement agreement so that he could obtain his aggregate fee.  Plaintiffs seek loss of settlement value and disgorgement of attorney fees.

D.      The Court's Earlier Order Overruling Defendant's Motion To Dismiss On Statute Of Limitations Grounds

On June 9, 2010, Davis filed a motion to dismiss, asserting in part that the two-year statute

---

[8]      The Pretrial Order (Doc. #291-1) has now been filed and supercedes the complaint.

of limitations barred plaintiffs' claims because this action accrued in mid-2003 (when the settlement

agreement proceeds were paid) and was never tolled, so it expired in mid-2005, some five years

before plaintiffs filed suit.  See Motion To Dismiss (Doc. #6); Memorandum In Support of Motion

To Dismiss (Doc. #7).  On August 31, 2010, the Honorable Judge Sam A. Crow overruled the

motion to dismiss.  See Memorandum And Order (Doc. #13).  Judge Crow noted plaintiffs'

contention that the action did not accrue or was tolled until December of 2009 when they learned

about the Kansas Supreme Court decision in Tilzer, dated April 3, 2009.  See id. at 11-12.  Judge

Crow reviewed Kansas case law and the parties' arguments, and then set out the issue and analysis

as follows:

> The issue then is when plaintiff knew or should have known that she sustained
>
>> an injury as the result of [the attorney's] malpractice.  In a legal
>> malpractice action, the statute of limitations does not necessarily
>> begin to run with the plaintiff's knowledge of an injury; rather, the
>> action accrues when the plaintiff reasonably ascertains that the fact of
>> the injury is the result of the attorney's past negligence.
>
> Dearborn Animal Clinic, P.A. v. Wilson, 248 Kan. 257, 270, 806 P.2d 997 (1991).
>
> In Tilzer, the Kansas Supreme Court held among other matters, that the Tilzer's
> settlement of their claims against the pharmaceutical companies was an "aggregate
> settlement" so that Missouri's statutory requirements of disclosures and client
> consent applied to this defendant.  In so finding, the Supreme Court effectively
> rebuffed the contrary 2004 ruling by Judge Wells of Missouri in the attorney's lien
> case.  Neither party shows any events prior to January of 2004 which would have put
> the plaintiffs on notice that they may have been injured by virtue of defendant's acts
> involving the settlement of the diluted drugs cases.  From January 14, 2004, when
> Judge Wells issued his decision on defendant's attorney's lien, until April 3, 2009,
> when the Kansas Supreme Court reversed the lower court, the status of the facts and
> the law was that Tilzer's settlement, and by comparison, Booth's settlement, was *not*
> an aggregate settlement and that defendant did nothing wrong in handling it.  Had
> plaintiffs filed their legal malpractice suit before April 3, 2009, their case likely
> would have been dismissed because of the pendency of other relevant proceedings.
> See Mo-Kan Teamsters Pension Fund v. Creason, 669 F. Supp. 1532, 1543 (D. Kan.

1987) (" . . . in Kansas a litigant should not be forced into court prior to adjudication of an appeal in which the grounds for the contemplated lawsuit, be it malicious prosecution or attorney malpractice, could be eliminated and the lawsuit avoided.")[.] Accordingly, the court finds that until April 3, 2009, plaintiffs' injury, if any, arising from defendant's handling of the aggregate settlement was not reasonably apparent to them.  This suit, having been filed within two years of that date, is timely.

Memorandum And Order (Doc. #13) at 14-15 (footnotes omitted).

## III.   **Analysis**

Davis asserts that Judge Crow's ruling on the motion to dismiss does not compel a finding that the case is timely filed.[9]  Davis notes that in the pretrial order, plaintiffs seek only "lost settlement value" of the underlying case, Doc. #291-1 at 16, and argues that plaintiffs' alleged injury was fully ascertainable no later than May 20, 2003, when the Special Masters determined the amount of her settlement award.  Plaintiffs respond that they could not have ascertained an injury caused by Davis' malpractice in 2003, arguing that nothing that occurred in 2003 put them on notice of Davis' wrongdoing, including failure to obtain informed consent regarding the aggregate settlement.

Davis relies in part on the rulings by Judge Rogers and the undersigned in related cases.  See Wille v. Davis, No. 11-4121-RDR, 2015 WL 3822762 (D. Kan. June 19, 2015); Waldon v. Davis, No. 11-4060-KHV (D. Kan. Aug. 20, 2015) (Doc. #149) (not available on Westlaw); Boehmer v. Davis, No. 11-4059-KHV (D. Kan. Aug. 21, 2015) (Doc. #139) (not available on Westlaw).  In those

---

[9]      In overruling defendant's motion to dismiss on statute of limitations grounds, Judge Crow held that the facts set out in the complaint, exhibits and incorporated documents did not demonstrate that plaintiffs' injuries were reasonably ascertainable until April 3, 2009.  In essence, Judge Crow found that plaintiffs had not pleaded themselves out of court.  See Booth v. Davis, No. 10-cv-4010-SAC, 2010 WL 4160116, at *7 (Aug. 31, 2010) (lawsuit filed within two years of Tilzer decision timely); see Schmitz v. Davis, No. 10-4011-SAC, 2010 WL 3861843, at *6 (Sept. 23, 2010) (same).  In contrast, on defendant's motion for summary judgment, the Court must determine whether, viewed in a light most favorable to plaintiffs, the evidence presents a sufficient disagreement to require submission to the jury or "whether it is so one-sided that one party must prevail as a matter of law."  Anderson v. Liberty Lobby, 477 U.S. 242, 251-52 (1986).

three cases, the Court found that the two-year statute of limitations barred claims that plaintiffs filed more than two years after <u>Tilzer</u>, but also stated that the ruling in <u>Tilzer</u> was not a material *fact* that was essential to plaintiffs' cause of action.  <u>See</u>, <u>e.g.</u>, <u>Wille</u>, 2015 WL 3822762, at *5.  Thus, the Court did not need to decide the question which this case squarely presents: based on the summary judgment record, when did plaintiffs' cause of action accrue.

Based on plaintiffs' assertion that Davis violated duties to inform them of the details and consequences of an aggregate settlement of their case against Eli Lilly and Bristol-Myers, plaintiffs assert tort claims of negligence, breach of fiduciary duty and fraud.  In this diversity action, the Court applies the choice of law rules of the forum state.  <u>Boyd Rosene & Assocs., Inc. v. Kan. Mun. Gas Agency</u>, 123 F.3d 1351, 1352-53 (10th Cir. 1997); <u>see</u> <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496-97 (1941).  Kansas courts follow the rule of lex loci delicti in choice of law issues, and therefore apply the substantive law of the place where a tort occurred.  <u>Anderson v. Commerce Const. Servs., Inc.</u>, 531 F.3d 1190, 1193-96 (10th Cir. 2008); <u>Ling v. Jan's Liquors</u>, 237 Kan. 629, 634, 703 P.2d 731, 735 (1985).  The parties agree that the tort occurred in Missouri, and the Court therefore applies Missouri substantive law.  Under Missouri law, the elements of an action for legal malpractice are (1) an attorney-client relationship; (2) negligence or breach of contract by the defendant; (3) proximate causation; and (4) damages.  <u>Patterson v. Warten, Fisher, Lee & Brown, LLC.</u>, 260 S.W.3d 417, 419 (Mo. Ct. App. 2008).[10]

---

[10]     Defendant argues that the statute of limitations bars each of plaintiffs' claims, but focuses entirely on application of the statute of limitations to legal malpractice.  Each of plaintiffs' claims are dependent on the existence of an attorney-client relationship.  Under Missouri law, a legal malpractice action is founded on an attorney's duty to exercise due care or to honor express contract commitments.  <u>See</u> <u>Klemme v. Best</u>, 941 S.W.2d 493, 495 (Mo. 1997) (en banc).  In addition, an attorney has the basic fiduciary obligations of undivided loyalty and confidentiality.  <u>Id.</u>  Missouri

(continued...)

In diversity cases, the Court applies the statute of limitations which the forum's courts would apply to the claims.  See, e.g., Miller v. Armstrong World Indus., Inc., 949 F.2d 1088, 1089 n.3 (10th Cir. 1991).  The Kansas limitations period for tort claims is two years, see K.S.A. § 60-513(a)(4), and the statute of repose is ten years, see K.S.A. § 60-513(b).

Davis contends that at the latest, the statute of limitations began running on June 24, 2003 – when Connie Booth received the settlement funds.  At that point, she knew that Hayes had received vastly more in her settlement with the Eli Lilly and Bristol-Myers.  Plaintiffs argue that their claims accrued on December 27, 2009 when they learned of the Tilzer case dated April 3, 2009.[11]  Plaintiffs argue that their complaint filed on February 3, 2010 was therefore timely.

Under Kansas law, a tort action generally accrues when "the act giving rise to the cause of action first causes substantial injury, or, if the fact of the injury is not reasonably ascertainable until

_____

[10](...continued)
courts recognize a claim for breach of these fiduciary duties, also characterized as an action for constructive fraud.  Id.  The elements of such a claim are (1) an attorney-client relationship; (2) breach of a fiduciary obligation by the attorney; (3) proximate causation; (4) damages to the client and (5) that no other recognized tort encompasses the facts alleged.  Id.  Where an alleged breach of fiduciary duty or constructive fraud claim is "dependent on" the existence of attorney negligence, Missouri courts hold that the alleged breach is "no more than an action for attorney malpractice.  Id. at 496 (citing Donahue v. Shughart, Thomson & Kilroy, P.C., 900 S.W.2d 624, 629-30 (Mo. 1995) (en banc)).  If the alleged breach can be characterized as both a breach of the standard of care (legal malpractice based on negligence) and a breach of a fiduciary obligation (constructive fraud), then the sole claim is legal malpractice.  See Klemme, 941 S.W. 2d at 496 (citing Donahue, 900 S.W.2d at 630).  Missouri case law does not preclude an action for breach of fiduciary duty or constructive fraud where the alleged breach is independent of any legal malpractice.  Id.

The Kansas limitations period for fraud claims is two years, but the cause of action "shall not be deemed to have accrued until fraud is discovered."  See K.S.A. § 60-513(a)(3).  In response to defendant's argument that the statute of limitations bars each of their claims, plaintiffs do not question whether the Kansas statute of limitations applies to their fraud claim.

[11]      On December 27, 2009, Tilzers' attorney, William Skepnek, contacted Scott Booth and made him aware of the Kansas Supreme Court decision in Tilzer.

some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party." K.S.A. § 60-513(b).[12]  Although the wording of Section 60-513(b) "appears to be straightforward and easily understood," the application of the statute to various factual situations has resulted in substantial litigation. Dearborn Animal Clinic, P.A. v. Wilson, 248 Kan. 257, 264 (1991).  The Kansas Supreme Court has also explained that in many legal malpractice cases, at least two areas of possible delay may make it difficult to determine precisely when the statute of limitations began to run: (1) where the negligent act occurs at the time the attorney performs or fails to perform services for the client, but considerable time lapses before the client actually suffers injury and (2) where a lapse occurs between the time that the client suffers injury and the time that the client knows or reasonably should know that attorney malpractice caused the injury. Id. at 265.  These delays have led Kansas courts to recognize at least four theories to determine when the statute of limitations begins to run in attorney malpractice actions, as follows:

> (1) The occurrence rule – the statute begins to run at the occurrence of the lawyer's negligent act or omission.
>
> (2) The damage rule – the client does not accrue a cause of action for malpractice until he suffers appreciable harm or actual damage as a consequence of his lawyer's conduct.
>
> (3) The discovery rule – the statute does not begin to run until the client discovers, or reasonably should have discovered, the material facts essential to his cause of action against the attorney.

---

[12]      The second alternative of K.S.A. § 60-513(b) "ameliorated the harsh result of [the first alternative] when applied to some of the malpractice cases where substantial injury occurs sometime after the negligent act but may not be ascertainable as such for several years" and "[w]hen there is an isolated act resulting in immediate injury not readily apparent to the innocent party." Dearborn Animal Clinic, P.A. v. Wilson, 248 Kan. 257, 264 (1991).

(4) The continuous representation rule – the client's cause of action does not accrue until the attorney client relationship is terminated.

Id. at 264 (quoting Pancake House, Inc., v. Redmond, 239 Kan. 83, 87 (1986)) (noting that although some states follow only one particular theory, practice demonstrates that "justice and fairness, as well as the statute," preclude adoption of one theory to exclusion of all others). Here, plaintiffs assert that the discovery rule applies and that the statute of limitations did not run until they learned of the Tilzer decision on December 27, 2009 or, at the earliest, when the Kansas Supreme Court issued the Tilzer decision on April 3, 2009.

To determine when the statute began to run under the discovery rule, the Court must determine when plaintiffs knew or should have discovered the material facts essential to their cause of action.  In determining the date on which an injury is reasonably ascertainable, a court must invoke an objective standard based on examination of all surrounding circumstances.  Id.  Further, Kansas law does not require that plaintiffs have ironclad actual knowledge about their injury; rather, plaintiffs must have such notice as would permit them to discover the injury with the use of due diligence.  "Reasonably ascertainable" does not mean "actual knowledge."  Austin v. U.S. Bank, Nat'l Ass'n., No. 03-4130-RDR, 2006 WL 980739, at *11 (D. Kan. Jan. 25, 2006); see Hutton v. Deutsche Bank AG, 541 F. Supp.2d 1166, 1169-70 (D. Kan. 2008).

In Dearborn, the Kansas Supreme Court explained that the statute of limitations does not run until it is reasonably ascertainable that *the injury suffered was the result of defendant's malpractice*; this means that plaintiffs must have had constructive knowledge of (1) the act of malpractice and (2) the injury suffered.  See 248 Kan. at 270, 806 P.2d at 1006.  Thus the Court must examine the alleged act(s) of malpractice and the injury plaintiffs claim to have suffered.

Highly summarized, plaintiffs assert that Davis breached his duties to Connie and Scott Booth (1) in negotiating the aggregate settlement without pushing for a better offer, (2) failing to disclose to Connie Booth the existence and nature of all claims and the participation of each person in the aggregate settlement and thus (3) failing to obtain her informed consent to the aggregate global settlement. Plaintiffs assert that as a result of his malpractice, Connie Booth received a lower settlement than she otherwise would have. Plaintiffs assert that before December 27, 2009, when they learned of the Kansas Supreme Court decision in Tilzer, they could not have discovered that Davis had failed to disclose the existence and nature of the claims and participation in the aggregate settlement or that he had failed to obtain Connie Booth's informed consent to the settlement. The Court disagrees.[13]

---

[13]    Plaintiffs rely on Judge Crow's earlier ruling on the motion to dismiss, which stated as follows:

> Had plaintiffs filed their legal malpractice suit before April 3, 2009, their case likely would have been dismissed because of the pendency of other relevant proceedings. See Mo-Kan Teamsters Pension Fund v. Creason, 669 F. Supp. 1532, 1543 (D. Kan. 1987) ("in Kansas a litigant should not be forced into court prior to adjudication of an appeal in which the grounds for the contemplated lawsuit, be it malicious prosecution or attorney malpractice, could be eliminated and the lawsuit avoided.")[.] Accordingly, the court finds that until April 3, 2009, plaintiffs' injury, if any, arising from defendant's handling of the aggregate settlement was not reasonably apparent to them.

Booth v. Davis, 2010 WL 4160116, at *7. In hindsight, and on reflection, the Court questions the relevance of Creason, in which proceedings on appeal were more directly related to the "contemplated lawsuit." In Creason, the court found as follows:

> [P]laintiffs were effectively barred from bringing a damage suit against defendants during the pendency of an appeal of [a district court] decision. On appeal, defendant Creason challenged the validity of the contract stipulation and the determination of whether he had effectively terminated his obligation. Until these were decided, an additional lawsuit concerning unpaid contributions after March 31, 1977 would have

(continued...)

The Kansas Supreme Court holding in <u>Tilzer</u> was not a material fact that was essential to plaintiffs' cause of action in this matter. Granted, it was a legal holding in a case with similar facts. But the Kansas Supreme Court ruling in <u>Tilzer</u> does not control the substantive issues in this case, which is controlled by Missouri law.[14]

Plaintiffs assert that Davis' alleged malpractice caused injury in the form of lost settlement value. On November 4, 2002, Connie Booth signed a Disclosure of Global Settlement[15] and a

_____

[13](...continued)
been a potentially fruitless and costly act, and it may even have been subject to dismissal for lack of ripeness. The courts of Kansas have not been willing to impose such a heavy burden on parties seeking legal redress. Therefore, the running of the statute of limitations was tolled at least from June 10, 1981 (the date the appeal was filed) to September 6, 1983 (the date on which the Tenth Circuit filed its opinion). As plaintiffs point out, this left approximately 11 months in which to file a suit for damages arising out of the unpaid contribution of May 10, 1977. Plaintiffs filed their suit July 2, 1984, approximately 10 months later. The action is timely.

<u>Creason</u>, 669 F. Supp. at 1538. In this case, <u>Tilzer</u> was not an appeal of underlying litigation related to the Booth plaintiffs' cause of action against Davis. The fact that the Tilzers had asserted similar legal malpractice claims did not preclude the Booth plaintiffs from asserting their own claims in a separate lawsuit. Accordingly, it does not appear that the reasoning in <u>Tilzer</u> would have had any impact on the Booth plaintiffs' ability to file their own cause of action against Davis.

[14]     On January 14, 2004, Judge Wells issued an order in the Missouri case which granted Davis' motion to enforce the attorney's lien and the pharmaceutical companies' motion to enforce the settlement agreement. Judge Wells specifically found that because of the methodology developed by the court and special masters, the global settlement was not an aggregate settlement within the meaning of Rule 4-1.8(g). Judge Wells also found no credible evidence of misconduct by Davis in that case.

[15]     The disclosure stated that defendant's law firm represented most of the plaintiffs in over 300 separate lawsuits regarding Courtney's dilution of chemotherapy medication. It further stated that Eli Lilly and Bristol-Myers had made a joint settlement offer to resolve all of the cases and to set aside money for future cases against them. The disclosure referred to the settlement agreement. When she signed the disclosure, Connie Booth represented that she understood that she had the right to opt out of the settlement agreement and to pursue her claims separately. She also represented that she understood that a Special Master would determine her right to receive funds
(continued...)

Release And Settlement Agreement which stated that she understood the process by which a Special Master would determine the settlement amounts and acknowledged that she agreed to accept the settlement amount determined by a Special Master as a full and complete compromise of her claims.[16]   On May 20, 2003, the Special Masters awarded Connie Booth $249,057.76.  On June 24, 2003, Connie Booth signed a Settlement Sheet which acknowledged receipt of settlement funds minus attorney's fees.  See Defendant's Ex. 17.

A layperson is not expected to have legal expertise or to hire a lawyer for a second opinion. See Dearborn, 248 Kan. at 266.  Here, however, by June 24, 2003, plaintiffs and Connie Booth knew that she had received a settlement which was a great deal less than Hayes (thus putting them on

---

[15](...continued)
under the settlement agreement.  The settlement agreement provided that a settlement fund of no less and no more than a specified amount would be established through binding arbitration.  Connie Booth acknowledged that Eli Lilly and Bristol-Myers each had offered Hayes separate settlements of approximately $1.45 million and that Hayes would not be participating in the distribution of funds by a Special Master.

[16]       The Release And Settlement Agreement provided in part as follows:

Settlement Amount. In consideration of the Release and Discharge set forth above, claimants hereby accept entitlement to a settlement amount to be determined by a Special Master appointed by the Court. Claimants acknowledge that they have consulted with their attorneys prior to executing this Agreement, and further acknowledge: (1) that they understand the process by which settlement amounts will be determined by the Special Master; and (2) that they have agreed to accept the settlement amount as determined by the Special Master as a full and complete compromise of all claims against Lilly and/or [Bristol-Myers].  The amount determined by the Special Master shall be set forth in the attached Certification of Special Master.

Defendant's Ex. 14.  Pursuant to the settlement agreement, Connie Booth filled out and submitted a claim form.  The claim form stated that she agreed to give up her rights against Eli Lilly and Bristol-Myers.

-18-

notice of an alleged injury).  On June 24, 2003, they also knew that Connie Booth's attorney had handled her settlement and most of the settlements in the Courtney cases.  Thus they knew or reasonably should have known that the alleged injury was due to attorney conduct.  At that point they had knowledge of the material facts essential to their cause of action: an attorney-client relationship, negligence or breach of duty by Davis, proximate cause and injury.  They could have filed suit at that time, just as the Tilzers did.  The Court therefore finds that at the latest, plaintiffs' cause of action, if any, accrued before June 24, 2003.  The two-year statute of limitations, K.S.A. § 60-513(b), thus bars plaintiffs' legal  malpractice claims.  The Kansas Supreme Court decision in Tilzer had no material effect on when plaintiffs' cause of action accrued: it vested no rights in plaintiffs which did not already exist.  And while it may have provided encouragement to sue, Kansas law does not toll a statute of limitations, or prevent it from running in the first place, pending the development of legal authority which is favorable to plaintiffs' claims.

IT IS THEREFORE ORDERED that Defendant Grant Davis' Motion For Summary Judgment (Doc. #319) filed April 11, 2016 be and hereby is **SUSTAINED**.

Dated this 25th day of April, 2016 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

-19-